IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JEROME ELLIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | CIVIL ACTION FILE NO. |
| | : | **7: 07-CV-11 (HL)** |
| DARRELL HART, Warden, | : | |
| P.A.JONES, NURSE FRY, and | : | |
| Supervisor FIELD, | : | |
| | : | |
| Defendants. | : | |

**RECOMMENDATION**

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 is a motion to dismiss or in the alternative motion for summary judgment filed by defendants. (Doc. 91).

At all times relevant to this lawsuit, plaintiff was incarcerated at Valdosta State Prison. Defendants are the Warden and other officials at the Prison. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the Constitution at various times during 2005.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).   Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*1. Defendant Warden Hart*

Plaintiff alleges that defendant Warden Hart was deliberately indifferent to plaintiff's serious medical needs by failing to ensure that plaintiff received proper medical treatment for his "life long kidney tubes movement that causes severe pain stomach illness, inflamed prostate glad" and that Warden Hart did not assist plaintiff in receiving medical care on October 28, 2005 and December 2, 2005.

### 2. *Supervisor Field*

Plaintiff alleges that Nurse Supervisor Field was deliberately indifferent to his serious medical needs on February 14, 2005. Plaintiff alleges Field told a nurse in plaintiff's presence not to give plaintiff medication for severe pain in his shoulder, back, back of neck, joints, legs and feet with numbness from February 14, 2005 until February 18, 2005.

### 3. *N.P. Fry*

Plaintiff alleges that defendant Fry discontinued plaintiff's laxative for chronic constipation on February 26, 2005; that on October 27, 2005, Fry interfered with specialist treatment for high hernia by discontinuing morning carfate and zantac because it cost too much money; by cancelling follow up appointment at Augusta State Prison for a high hernia on October 28, 2005; by ignoring plaintiff's complaints that he had a swollen prostate and problems urinating; and by prescribing fiber and colace for constipation rather than the Phillips Milk of Magnesia he requested..

### 3. *P.A. Jones*

Plaintiff alleges that defendant Jones violated his constitutional rights on three occasions: Jones ignored plaintiff's complaints of ineffective treatment for foot fungus and pain on March 11, 2005; that Jones stopped his laxative on an unspecified date; Jones failed to take action upon being notified by plaintiff on October 28, 2005 that the treatment he was receiving for body back pain and numbness was not giving him any relief.

### 4. *Dr. Moody*

Plaintiff alleges that Dr. Moody violated his constitutional rights in the following ways: Dr. Moody refused to send plaintiff to the hospital as he did for white inmates for plaintiff's

complaints of pain in his stomach, back, chest, passing blood in his stool; that Dr. Moody did not provide further treatment for his stomach and kidney tube issues that "needed fixing;" by telling plaintiff that tests performed at Augusta State Medical Prison on May 25, 2005 showed that nothing was wrong with his stomach or kidney tubes; that Dr. Moody ignored the results of an upper G.I. and colonoscopy on September 17, 2005 from Augusta State Prison that revealed a swollen prostate gland and a high hernia; and that Dr. Moody stopped pain medication on October 17, 2005.

*Failure to Exhaust Administrative Remedies*

Defendants assert that plaintiff has failed to exhaust administrative remedies as to all incidents of alleged deliberate indifference specified in his complaint but for one allegation against Dr. Moody for his alleged discontinuation of plaintiff's pain medication in October 2005.

Defendants have submitted the affidavit of Shevondah Fields (Doc. 91), who is the Manager of the Office of Investigations and Compliance for the Department of Corrections. The grievance procedure is explained in the Georgia Department of Corrections Standard Operating Procedures.  (*Id.*). Upon entering the Department of Corrections, each inmate receives an oral explanation of the grievance procedures as well as a copy of the Orientation Handbook for Offenders, which includes instructions about the procedures. (Doc. 91 Fields Aff. at ¶ 6).

The Georgia Department of Corrections inmate grievance procedure provides that an inmate must file an informal grievance within ten (10) days of the event, after which the facility has ten (10)  days to respond. (Doc. 91 Fields Aff. at ¶ 8; see also Exhibit A to the Fields Aff., Georgia Department of Corrections Standard Operating Procedure Reference No. IIB05-001, at Sections VI.B.5 and 8 , pages 5-6). If an inmate does not get the relief he desired, he has five (5)

additional days after receipt of the facility's decision to file a formal grievance. The facility has thirty (30) days to respond to the formal grievance. If, after completion of the formal grievance process, the inmate is still unsatisfied, he may appeal the facility's determination of his formal grievance within five (5) days of receipt of that decision. (Doc. 91 Fields Aff. at ¶ 11; see also Exhibit A at pages 8-9).

According to Fields, on February 15, 2005, Plaintiff filed three formal grievances: Grievance No. 0537-05-0037 against Al Jones and Beth Fields, alleging that he was being discriminated against by medical; Grievance No. 0537-05-0038 against Al Jones for the denial of glasses with tinted lenses; and Grievance No. 0537-05-0039 against Al Jones for medical neglect.
(Doc. 91 See Exhibit C to Fields Aff., pages 1 through 4). All three grievances were denied at the
institutional level. ( Doc. 91 See Exhibit C, page 1). Plaintiff did not appeal any of these grievances. (Doc. 91 Fields Aff. at ¶¶ 14 and 17; *Id.*).

Plaintiff did not grieve any of the events alleged in March, May or October 2005. (*Id.*; see also Exhibit C at page 1). Plaintiff filed Grievance No. 0537-05-0282 against Dr. Moody on December 1, 2005, alleging that he was not receiving proper medical treatment. (Doc. 91 Fields Aff. at ¶ 16; Exhibit C to Fields Aff., at pages 1 and 7). This grievance was denied at the institutional level; plaintiff appealed the grievance, and the appeal was also denied. (Doc. 91 Exhibit C to Fields Aff., at page 7).

Section 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are

5

available," as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998).

"That provision plainly requires that administrative remedies be exhausted *before* the filing of suit, rather than while the action is pending." Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (emphasis in original). Exhaustion of administrative remedies is a precondition to the filing of a §1983 suit in federal district court. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir.2001) (per curiam). See also Lyons v. Serrano, 205 Fed. Appx. 719, (11th Cir. 2006).

Plaintiff states that he has fulfilled the exhaustion requirement because his grievances were denied. However, that is clearly not the law in this circuit. In Moore v. Smith, 18 F.Supp.2d 1360, 1363 (N.D.Ga. 1998), the Court held that since Plaintiff did not appeal the denial of his grievance, Plaintiff failed to exhaust "such administrative remedies as are available" and his case was dismissed. In Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999), the Court found that Plaintiff filed an out of time grievance and failed to seek leave to file an out of grievance, therefore, he had not exhausted his administrative remedies prior to filing suit.

Because Plaintiff has failed to exhaust all available administrative remedies against defendants Hart, Jones, Fry, and Field, the claims against them should be dismissed.

### *Deliberate Indifference to a Serious Medical Need by Dr. Moody*

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not

6

rise to the level of constitutional violations." It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25 (1993). Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting Horn ex rel. Parks v. Madison Co. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873 (1994). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." McElligott v. Foley, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

A medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994) (quotation marks and citation omitted). To demonstrate "significant" harm, a plaintiff must provide verifying medical evidence that proves that it was the denial or delay in medical treatment that caused the harm rather than an underlying condition or injury. Hill, 40 F.3d at 1186; Harris, 21 F.3d at 393-94 (11th Cir.1994). The medical care provided to an inmate must be reasonable. Patterson v. Riddle, 407 F. Supp. 1035 (E.D. Va. 1976). However,

"it is not required that the medical care provided to the inmate be perfect, the best obtainable, or even very good." Estelle, 429 U.S. at 106. *See also* Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991); Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980); Hawley v. Evans, 716 F. Supp. 601, 603 (N.D. Ga.1989).

The Eleventh Circuit has noted that, "where a prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." Murphy v. Turpin, 159 Fed. Appx. 945 at fn. 4, (11th Cir. 2005), citing Hamm, 774 F.2d at 1575. "Thus, where an inmate receives medical care, but desires a different mode of treatment, the care provided does not amount to deliberate indifference." Id.

In Estelle v. Gamble, supra, the Supreme Court cautioned, however, that not every allegation of inadequate medical treatment states a constitutional violation. Estelle at 105. Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment. *Id.* at 106 (stating "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A Section 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." Brinton v. Gaffney, 554 F.Supp. 388, 389 (E.D.Pa.1983); see Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991).

"The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is

8

medical malpractice, and as such the proper forum is the state court." Estelle, supra, at 107.

According to the documentation submitted by defendants which includes plaintiff's medical records as well as an affidavit from Dr. Moody, it appears that between January 2005 and December 6, 2005 plaintiff was seen by medical personnel at Valdosta State Prison thirty-three times, an average of 3 times each month. (Doc. 91 Moody Aff. at ¶ 3; See generally Exhibit A to Moody Aff., Plaintiff's Medical Records for 2005).

Plaintiff was seen by medical personnel at Valdosta State Prison on four occasions in February 2005: on February 11, Plaintiff complained of a cold; on February 22 Plaintiff was seen twice, the first time complaining of constipation and the second time for a cold; and, on February 28, Plaintiff appeared complaining of constipation (Doc. 91 Moody Aff. at ¶ 5; Exhibit A to Moody Aff., Tab 4, page 2-4, 6). On that date, Plaintiff informed N.P. Fry he had had a bowel movement that morning. *Id.* Plaintiff was prescribed Milk of Magnesia to facilitate bowel movements. *Id* 5. At no time in February 2005 did Plaintiff present to medical personnel at Valdosta State Prison complaining of back, neck and joint pain. (Doc. 91 Moody Aff. at ¶ 6; see generally Exhibit A to Moody Aff. at Tab 4).

Plaintiff had been placed on Neurotin, which is a medication used in the treatment of seizures and nerve pain, prior to February 2005 to treat his longstanding complaints of neck, back, and joint pain. Neurotin was prescribed to Plaintiff in February 2005 as a continuation of this therapy. (Doc. 91 Moody Aff. at ¶ 8).

On February 28, 2005, Plaintiff was given prescriptions for Neurotin 600 mg, "MOM" [milk of magnesia], Dove soap and Lamosil for skin conditions, and was given a profile that prohibited standing for long periods, lifting over 25 pounds and "no wellness walk." Plaintiff

9

was also scheduled for an xray and a consultation for the pain clinic. (Doc. 91 Moody Aff. at ¶ 7; (Exhibit A to Moody Aff., Tab 4, Page 6, and Tab 1, Physician's Orders, page 11).

Throughout February, Plaintiff was prescribed Milk of Magnesia for his constipation, was advised to drink several glasses of water every day and was instructed to be compliant with his medications. (Doc. 91 Moody Aff. at ¶ 9; Exhibit A to Moody Aff., Tab 1, Physician's Orders, page 11, and generally Tab 4).

Plaintiff was seen by medical personnel at Valdosta State Prison on three occasions in March 2005: on March 2, an xray was taken for evaluation of plaintiff's chronic constipation; on March 14, Dr. Raymond Moody evaluated Plaintiff, who presented complaining of GERD, congestion and an upper respiratory infection; and, on March 23, a follow-up xray was taken of Plaintiff to evaluate his chronic constipation. (Doc. 91 Moody Aff. at ¶ 10; Exhibit A to Moody Aff., Tab 2 at page 1; Tab 5, page 1, and Tab 2, page 2). Also on that date, Dr. Moody began treating Plaintiff with colace and Metamucil. Id.

At no time in March 2005 did Plaintiff present with complaints of, nor is there any medical evidence of, kidney problems or any other problems that would have required hospitalization of Plaintiff. (Doc. 91 Moody Aff. at ¶ 11). Plaintiff was not seen by medical staff at Valdosta State Prison again until April 5 and 6 for routine testing. (Doc. 91 Moody Aff. at ¶ 12; see generally Exhibit A to Moody Aff., Tab 6).

Plaintiff did not request and was not seen by medical personnel at Valdosta State Prison again until May 10, 2005, when he presented with complaints of constipation. On that date, a Physician's Assistant began treating Plaintiff's constipation with Carafate and continued therapy with Metamucil. On May 11, Plaintiff was referred for another xray. (Doc. 91 Moody Aff. at ¶

10

13; Exhibit A to Moody Aff., Tab 7, at page 1, and Tab 2, page 3).

On May 25, 2005, an xray was taken of Plaintiff's abdomen and pelvis. The xray revealed that Plaintiff was suffering from mild to moderate constipation. The xray further showed that there was "no evidence of solid organ mass or abdominal hernia." The xray showed that Plaintiff's "kidneys show[ed] normal size, shape and morphology." (Doc. 91 Moody Aff. at ¶ 14; Exhibit A to Moody Aff., Tab 2, page 3). The xray also revealed "multiple calcifications throughout the prostate," but the radiologist at no time concluded that Plaintiff suffered from an enlarged prostate. *Id.* The interpreting radiologist concluded that the xray showed the following:

> 1. Redundant rectosigmoid colon with a large loop in the mid abdomen, with evidence of retained stool consistent with mild to moderate constipation;
> 2. No evidence of solid organ mass or abdominal hernia;
> 3. No nephrolithiasis or hydronephrosis.

*Id.*

On May 31, 2005, Plaintiff was again seen for complaints related to constipation and abdominal pain. (Doc. 91 Moody Aff. at ¶ 14; Exhibit A to Moody Aff., Tab 7, at page 9). At that time, he was being treated with Prilosec, Carafate and Metamucil. *Id.* He was placed again on therapy with colace and was scheduled to follow up with the physician. *Id.* Also, on that date, the Plaintiff was advised "NOT TO CONSUME Baby Oil." Id.

On June 6, 2005, Dr. Moody requested "GI for evaluation" and an endoscopy. (Doc. 91 Moody Aff. at ¶ 15; Exhibit A, Tab 8, at page 2). On July 22, 2007, Nurse Practioner Scoggins made another consultation request for an EGD and a colonoscopy. (Doc. 91 Moody Aff at ¶, 15; Exhibit A, Tab 9, at page 4). In September 2005, Plaintiff was sent from Valdosta State Prison to Augusta State Medical Prison for colonoscopy and endoscopy procedures. Neither the endoscopy nor the colonoscopy revealed any evidence of a hernia. (Doc. 91 Moody Aff. at ¶ 15;

Exhibit A to Moody Aff., Tab 11, pages 2 through 35).

Further, neither the endoscopy nor the colonoscopy revealed any evidence of a hole in Plaintiff's stomach. *Id.* The results of the colonoscopy were normal. (*Id.*; Exhibit A, Tab 11, page 32). The endoscopy revealed gastritis and esophogitis. Id.

On October 25, 2005, Plaintiff was evaluated and treated for GERD (gastroesophogeal reflux disease) and gastritis. (Doc. 91 Moody Aff. at ¶ 16; Exhibit A, Tab 12, page 5). Medical personnel at Valdosta State Prison recorded that Plaintiff gave a history of hiatal hernia, which she noted with a question mark. (Doc. 91 Moody Aff. at ¶ 16; Exhibit A to Moody Aff., Tab 12, page 4). Neither the xray taken on May 25, 2005, the endoscopy performed September 16, 2005, nor the colonoscopy performed September 16, 2005, showed any evidence of hernia. (Doc. 91 Moody Aff. at ¶ 16; Exhibit A, Tab 2, page 3; Exhibit A, Tab 11, page 32). In fact, the xray taken on May 25, 2005, concluded that there was no evidence of abdominal hernia. (*Id*; Exhibit A, Tab 2, page 3).

On October 28, 2005, the records show that Plaintiff requested a bottle of milk of magnesia and that N.P. Fry prescribed mineral oil for him instead. (Doc. 91 Moody Aff. at ¶ 17; Exhibit A to Moody Aff., Tab 12, at page 5). These records also show that N.P. Fry recommended recommended an xray for Plaintiff to better diagnose and treat his constipation condition. (*Id.*; see also Exhibit A, Tab 1, at page 3, and Exhibit A, Tab 2, page 4). Plaintiff had this xray on November 1, 2005, which revealed evidence of constipation. (*Id.*).

On October 7, 2005, Dr. Moody met with Plaintiff to discuss his medications. Plaintiff's Neurotin had been confiscated by mental health staff as it appeared that Plaintiff was not, in fact, taking the Neurotin but instead was hoarding the medication, packaging it in cellophane and

reselling it to other inmates. The seizure of Plaintiff's medication, combined with his consistent non-compliance with his medications, led Dr. Moody to conclude it necessary to discontinue Plaintiff's treatment with Neurotin. (Doc. 91 Moody Aff. at ¶ 18; Exhibit A to Moody Aff., Tab 12, page 1).

Dr. Moody saw Plaintiff again on October 14, 2005. At that time, Plaintiff complained of back pain and insisted that his Neuortin be reinstated. Dr. Moody prescribed Tylenol 500 mg for Plaintiff and told him to file a grievance if he wanted the Neurotin issue investigated. (Doc. 91 Moody Aff. at ¶ 19; Exhibit A to Moody Aff., Tab 12, Page 2, Tab 1, page 4, and Tab 12, at page 2).

Plaintiff was evaluated and treated by medical staff at Valdosta State Prison on six occasions in November 2005: November 2, 4, 9, 14, 18 and 22. (Doc. 91 Moody Aff. at ¶ 20; Exhibit A, Tab 13). On November 4, 2005, Plaintiff was evaluated for constipation and abdominal pain by Dr. Moody, who noted that Plaintiff was not being compliant with his medications. (*Id.*; Exhibit A, Tab 13, Page 2). Plaintiff did not present to medical personnel at Valdosta State Prison again with complaints of back, neck and joint pain complaints until November 22, 2005. At that time, Plaintiff was prescribed Motrin 800 mg and heat/ice treatments for his back and neck pain. (Doc. 91 Moody Aff. at ¶ 20; Exhibit A to Moody Aff., Tab 1, page 3 and Tab 13, at page 7).

On December 1, 2005, Plaintiff received a mental health evaluation from Briccio Valdez, M.D., who noted that Plaintiff suffered from "many psychosomatic illnesses," but also noted that Plaintiff's only complaint on that date was that his razor had been broken. (Doc. 91 Moody Aff. at ¶ 21; Exhibit A, Tab 14, page 1). On December 6, 2005, Plaintiff was transferred from Valdosta State Prison to Central State Prison. (*Id.*; Exhibit A, Tab 14, page 2). Upon his intake at

Central State Prison, Plaintiff reported his condition as "okay." *Id.*

At no time in 2005 was Plaintiff diagnosed with a hernia, an enlarged prostate, foot fungus, or a "hole in his stomach." (Doc. 91 Moody Aff. at ¶ 26; see generally Exhibit A). Plaintiff was never scheduled for hernia surgery. *Id.* At no time in 2005 did Plaintiff present with complaints related to an enlarged prostate, foot fungus or a hole in his stomach. Id.

Plaintiff's medical record as summarized above is replete with consistent, ongoing care for a variety of ailments. It appears that defendants ordered medication for plaintiff, as well as additional testing, and sent him for more extensive testing at Augusta State Medical Prison in order to further diagnose his medical complaints.

As to plaintiff's allegation that Dr. Moody unconstitutionally discontinued his Neurotin medication, Dr. Moody has shown that plaintiff was non-compliant with the medication and was even hoarding it in order to sell it to other inmates. Consequently, Dr. Moody discontinued that medication, but gave plaintiff other pain medication instead.

Defendants have shown that they were not deliberately indifferent to any of plaintiff's serious medical needs; instead they have shown that they were quite attentive to plaintiff's medical conditions during the time period in question. It is clear that plaintiff is arguing that defendants should have performed more testing, or the testing they conducted was inadequate; however, plaintiff has failed to provide any evidence that would create a material issue. Moreover, plaintiff has failed to provide any documentation that he suffered any harm as a result of any delay or refusal of treatment, rather than his underlying medical conditions. To demonstrate "significant" harm, a plaintiff must provide verifying medical evidence that proves that it was the denial or delay in medical treatment that caused the harm rather than an

underlying condition or injury.   Hill, 40 F.3d at 1186;   Harris,  21 F.3d at 393-94 (11th Cir.1994).

"The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." Estelle, supra, at 107.

Therefore, it is the RECOMMENDATION of the undersigned that defendants' motion to dismiss be **GRANTED** as to defendants Hart, Jones, Fry, and Field, and that summary judgment be **GRANTED** to Dr. Moody.    Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 20th day of February, 2009.

                                                   //S Richard L. Hodge
                                                   RICHARD L. HODGE
msd                                             UNITED STATES MAGISTRATE JUDGE